UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS

MARCUS J. WALLS

CRIMINAL ACTION

NO. 08-83-JVP-DLD

## RULING ON MOTION TO SUPPRESS

This matter is before the court on a motion by defendant, Marcus J. Walls, to suppress statements made and physical evidence seized subsequent to a traffic stop of defendant's vehicle (doc. 14). The government has opposed the motion (doc. 16), and an evidentiary hearing was held on January 15, 2008. The government and defendant have both filed post hearing memoranda (docs. 27 & 28, respectively). Jurisdiction is based on 18 U.S.C. § 3231 and the matter is now submitted.

### FACTUAL BACKGROUND

On June 19, 2008, defendant, Marcus J. Walls, was charged by indictment with one count of violating 18 U.S.C. § 922(g)(1), knowing possession of a firearm by a felon. At the hearing of this matter, Officer Laurice Teague of the Baton Rouge City Police Department, testified that, prior to defendant's arrest, she was driving south on North Lobdell Street in Baton Rouge when she was stopped by the traffic-

light at the Florida Boulevard intersection.[1] She stated that, after the light facing her turned green, she observed defendant's vehicle pass through the intersection going westbound on Florida Boulevard. Officer Teague stated that she looked at the light controlling the westbound traffic and saw that it was red. She, therefore, made a right turn, followed defendant's vehicle briefly, and performed a traffic stop.

A video recording of the stop was played at the hearing. The video, made by a camera mounted on the patrol car, shows that, after stopping his vehicle, defendant exited it and approached the officer near the patrol vehicle. They spoke for a few moments and defendant returned to the driver's side of his vehicle to search for registration and insurance documents. Shortly thereafter, defendant returned to the officer, spoke briefly again with her, and then returned to continue searching for the documents.

As defendant returned to his vehicle the second time, the officer followed. The video shows that the officer removed her flashlight from her belt as she approached the driver's side of the vehicle. Approximately eight seconds after that, she ordered defendant to step away from the vehicle. She then searched defendant, had him kneel, placed handcuffs on him, and told him that she was acting strictly for her own protection because she had observed a gun in his car.

---

[1]The vehicle-mounted video recording of the traffic stop and arrest indicates that the traffic stop was initiated at approximately 11:58 p.m. on the night of November 7, 2007 and the recording time is 51 minutes and 15 seconds.

Officer Teague testified that she then escorted defendant to the patrol vehicle and asked him if he was a convicted felon. She stated that he seemed evasive but mentioned something about having been arrested for cocaine. According to the time stamp on the video, by about 12:16 a.m., the officer confirmed by radio that defendant had been previously convicted of a felony, and he was placed under arrest.

## LAW AND DISCUSSION

"The foremost method of enforcing traffic and vehicle safety regulations . . . is acting upon observed violations. Vehicle stops for traffic violations occur countless times each day; and on these occasions, licenses and registration papers are subject to inspection and drivers without them will be ascertained." *Delaware v. Prouse*, 440 U.S. 648, 659, 99 S.Ct. 1391, 1399, 59 L.Ed.2d 660 (1979).

Though defendant argues that the facts supporting the traffic stop are disputed, he has offered no evidence to controvert Officer Teague's testimony that she observed defendant commit a traffic violation by running through a red light. The court therefore concludes that the officer did not violate plaintiff's Fourth or Fourteenth Amendment right by performing a traffic stop and by seeking to inspect defendant's vehicle registration, insurance documentation, or motor-vehicle inspection sticker.

The video recording played at the hearing shows that the officer approached defendant's vehicle with her flashlight in hand, apparently to view the motor vehicle

inspection sticker while she waited for defendant to find his other registration documents. The officer testified that she observed the gun on the floorboard "sticking out from under the front seat" of the vehicle (transcript, p. 25).

It is well established that police may seize evidence without a warrant where the evidence is in plain view of an officer, if there is "an extraneous valid reason for the officer's presence." See *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 2039, 29 L.Ed.2d 564 (1971). Because the officer had a lawful reason to be standing where she was at the time she observed the gun, and because the only evidence before the court indicates that the gun was in plain view, the court concludes that the gun was not seized subject to an improper search.

Likewise, the court concludes that the officer was justified in acting to ensure her own safety after finding the weapon and in investigating whether defendant was a felon. The Supreme Court has laid out the pertinent principles as follows:

> In *Terry* this Court recognized that 'a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest.' *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. See *id.*, at 23, 88 S.Ct., at 1881. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be

> most reasonable in light of the facts known to the officer at the time. Id., at 21-22, 88 S.Ct., at 1879-1880; see Gaines v. Craven, 448 F.2d 1236 (CA9 1971); United States v. Unverzagt, 424 F.2d 396 (CA8 1970).
>
> The Court recognized in *Terry* that the policeman making a reasonable investigatory stop should not be denied the opportunity to protect himself from attack by a hostile suspect. 'When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others,' he may conduct a limited protective search for concealed weapons. 392 U.S., at 24, 88 S.Ct., at 1881. The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence, and thus the frisk for weapons might be equally necessary and reasonable, whether or not carrying a concealed weapon violated any applicable state law.

*Adams v. Williams*, 407 U.S. 143, 145-46, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972).

Upon observing the firearm in plain view, it was reasonable for the officer to render the scene safe and to investigate further. The video record indicates that less than fifteen minutes elapsed from discovery of the firearm to the officer's discovery of defendant's felony conviction. Accordingly, the court concludes that the Smith & Wesson semi-automatic .40 caliber pistol, bearing model SW40WVE, was properly seized, and the motion to suppress will be denied insofar as it seeks suppression of the firearm.

The government, however, has stipulated to the officer's failure to inform defendant of his *Miranda* rights (doc. 27, p. 2). Thus, any incriminating statements

made by defendant after he was placed in custody will not admissible at trial. See *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

## CONCLUSION

For the foregoing reasons, the motion by defendant, Marcus J. Walls, to suppress statement and evidence (doc. 14), is hereby **DENIED** insofar as it seeks suppression of the Smith & Wesson semi-automatic .40 caliber pistol, bearing model SW40WVE, and is hereby **GRANTED** insofar as it seeks suppression of statements made by Mr. Walls after he was taken into custody.

Baton Rouge, Louisiana, June 30, 2009.

RALPH E. TYSON
UNITED STATES DISTRICT JUDGE
MIDDLE DISTRICT OF LOUISIANA